Statement of the case.

# JOHN DUNSTEDTER

*v.*

# JACOB DUNSTEDTER.

1. FORCIBLE ENTRY AND DETAINER—*of barn by one having a mere license to occupy in common with owner.* Where a party erected a barn on his lot, and allowed his son to occupy and use the same in common with himself, for many years, without any rent or contract respecting the same, and the son finally took exclusive possession thereof, and kept the owner out of the same: *Held,* in an action of forcible entry and detainer, by the father against the son, for possession, that the plaintiff was entitled to recover.

2. REAL ESTATE—*occupancy by mere permission gives no right in, as against owner.* Where a father permits his son to occupy his barn continuously with himself for a long time, under no contract or agreement, this will not vest in the son any right in the property, or to its possession. It amounts only to an implied license, subject to revocation by notice at any time.

3. SAME—*building erected on, by owner's consent.* If the owner of a lot consents to the building of a barn thereon by another, without any terms being agreed upon, the presumption will be that the barn was to become a part of the freehold, or that the owner is to pay for the building.

APPEAL from the Circuit Court of Madison county; the Hon. WILLIAM H. SNYDER, Judge, presiding.

This was an action of forcible detainer, brought by John Dunstedter against Jacob Dunstedter, to recover a certain part of a lot, including a barn situated thereon, and the cause taken by appeal to the circuit court.

On the trial of the appeal by the court, without a jury, judgment was rendered in favor of the defendant, from which the plaintiff appealed. The opinion of the court states the substance of the facts.

Messrs. METCALF & BRADSHAW, for the appellant.

Messrs. KROME & HADLEY, for the appellee.

Mr. JUSTICE WALKER delivered the opinion of the Court:

In this case, appellee filed a complaint against appellant, for the detention of the possession of fifty feet on the south end of a town lot, and a barn situated thereon. On the trial below, it appeared that appellee was the owner of the ground on which the barn was situated; but each party claimed to be entitled to possession of that building.

It appears that the parties owned the premises in dispute as tenants in common, and, as early as in 1860, appellee sold and conveyed his undivided interest to appellant. The stable was built after this conveyance was made, but appellee claims that it was before the deed was recorded. Appellant either gave appellee permission to build the stable at his own expense, or authorized him to do so for appellant as his agent, and at his expense—which, is not certainly shown. Appellant swears that he is unable to read and write, and had appellee to transact his business, and to have the stable built, and that he furnished appellee the money to pay the workmen for labor, etc.

On the other hand, appellee claims he built the stable, and paid for it; and it is conceded they both used it by keeping their horses and the feed for them in the building, from the time it was erected, until comparatively a short time before this suit was brought. But upon what terms, and on what understanding it was so occupied, does not appear. Appellant does not testify that it was agreed that he was to have the exclusive use of the property, nor does he state that there was any understanding as to how it was to be used; but he does say that appellant had the privilege of using it as much as he did; that he considered his father had the same right in its occupancy as he had; that he could put anything in he desired; but he says he was the landlord, paid no rent, and was not the tenant of his father. He nowhere mentions the terms upon which he built or occupied the stable.

In this evidence we perceive nothing indicating the relation of landlord and tenant, even if appellee's version is taken as true. It may be inferred, from the length of time that the parties occupied the stable, that appellee did so with the assent of appellant; but that did not create a term or any title to the premises. The parties both occupied the building continuously, and that could not, in the absence of contract or agreement, give appellee any vested right in the property or to its possession. It, at most, could amount to no more than an implied license to occupy the property in conjunction with appellant, and to terminate appellee's right to so occupy it, appellant only had to give notice that the license was revoked. There can be no pretense that appellee, after receiving such notice, could lawfully hold the possession, and exclude appellant from its occupancy.

But it is urged that appellant licensed appellee to erect the building on his ground, and that where there is such a license given, the licensee has the right to remove the building. Appellee, it is true, testified that his father gave his consent that he might build the barn, but he does not say upon what terms. If none were specified, the presumption would be that it was to become a part of the freehold, or that the owner would pay for the erection. Again, it appears that appellee had occupied the barn continuously for fourteen years or upwards; and if it be a fair inference, in the absence of other proof, as we think it is, that appellee was to occupy it until remunerated for his outlay, if he expended anything, then we are not prepared to say, and the evidence is silent on the point, that he has not had full compensation from the use of the building. But if he has not, his remedy, if he has any, is by an action to recover damages.

The evidence fails to establish the claim that appellee paid for the building out of his own means. His father, the appellant, testified that appellee transacted his business, and that appellant furnished the money to pay for the erection of the building. It is true that appellee produced the receipt

of the carpenter, who did the work, for his pay, but that is not inconsistent with the fact that appellant may have furnished the money; and if appellee was in the habit of transacting appellant's business, and he had the building erected, it is reasonable to suppose that the money was thus furnished.

We are clearly of opinion that appellant proved a case that entitled him to recover, and for that reason, the judgment of the court below is reversed and the cause remanded.

*Judgment reversed.*