RUFUS J. THOMASSON

v.

HARRIET B. WILSON.

*Forcible Detainer—Restitution.*

1. In actions of forcible detainer, the question is not in whom is the title to the premises, but is one of possession and right of possession only.

2. The law of the State of Illinois is well settled, that the grantee of

Thomasson v. Wilson.

the landlord's reversionary interest or estate is the proper person to bring the action of forcible detainer after determination of the lease.

3. There is a distinction between cases where the original entry was forcible, and those where it was peaceable, and the detention alone is wrongful and tortious. Where the entry is forcible, the right of action is complete as soon as the entry is made, in the person whose possession is thus tortiously invaded; but when the entry is made peaceably and without force, it is the detention alone that is unlawful and tortious, and no right of action exists until after demand for possession. The injured party is the only one who can bring the action, and he is, in the one case, the person entitled to the possession at the time of the tortious or forcible entry, and in the other case, the person entitled to the possession, when the tortious withholding occurs after demand for possession.

4. A person occupying premises by license of the tenant can not surrender the tenant's possession thereof, by himself vacating the same.

5. In an action of forcible detainer, this court declines to interfere with a judgment of restitution in favor of the plaintiff.

[Opinion filed November 17, 1892.]

Appeal from the Circuit Court of Cook County; the Hon. S. P. McConnell, Judge, presiding.

Messrs. Millard & Boyesen, for appellant.

Messrs. Thornton & Chancellor, for appellee.

Mr. Justice Shepard. This was an action of forcible detainer, and the appeal is from a judgment of restitution in favor of the appellee and against the appellant, the case having been tried by the Circuit Court without a jury.

In actions of forcible detainer, the question is not in whom is the title to the premises, but is one of possession and right of possession only.

Counsel for appellant say it is an undisputed fact that Frederick R. Wilson held a tax title against the premises in question, and it seems to be conceded that he conveyed whatever interest he held to his sister, Julia Wilson.

The evidence discloses that Frederick R. Wilson surrounded the property with a fence and built a house on it, more than twenty years ago, and that the fence and house

have ever since been maintained, except that at the time of the detention complained of the fence was broken in places.

After the conveyance to Julia Wilson and on April 1, 1886, she, by Frederick R. Wilson, her attorney in fact, made a lease of the premises to Mrs. Annestine Laddness, for a term of six years from that date, at an annual rental of $25. Mrs. Laddness went into possession under that lease, or perhaps under that lease continued a possession previously held by her under some other arrangement. Some time, and probably soon, after the lease was made, the family of James H. Bell, a son of Mrs. Laddness, moved into the house and occupied a part of it from that time until in June, 1890.

Mrs. Laddness was a poor woman and worked out more or less of the time, or, as she expressed it, whenever she was "hard up and had coal and wood to get," and it can not be doubted but that she was frequently away from the house, sometimes every day, but returning at night, and sometimes for several weeks at a time, and then returning and staying a week or so, and again going away to work.

Bell, the son of Mrs. Laddness, did not, so far as anything appears, move into the house adversely to any person, and he never claimed to occupy the house to the exclusion of Mrs. Laddness. Bell's wife, as he says, moved into the house in May or June, 1886, while he was away in Kansas, because, as she says, her sister died, leaving four children for her to take care of, and she thought it was the best place she could find to leave the children while she went out to work; and upon Bell's return he went there. Bell's family occupied one part of the house, and Mrs. Laddness the other. He paid no rent to any person, and no person demanded rent of him. That Mrs. Laddness claimed authority over the premises as against her son, appears in the testimony of Mrs. Bell, to the effect that when they quarreled and Mrs. Laddness became angry, she would say the place was hers, and not theirs.

The testimony of Bell tends to show that for a considerable time before he moved out of the premises, Mrs. Ladd-

ness had no furniture left in the house, and that when she came there to stay, she slept on a lounge and took her meals with Bell's family. Mrs. Laddness testified that the last time she was in the house before the appellant occupied it, was in May, 1890, when she stayed there a couple of weeks, or a month or so, and that she then left the house in charge of her son. Bell corroborates Mrs. Laddness in the fact of her being at the house in June, or the latter end of May, but says she was there only a couple of days at that time. He does not, however, testify to any change having occurred at that time, or at any other time, in his relations, or in those of Mrs. Laddness, to the premises, from what they were at the time he moved into the house, unless he meant to be understood that he acquired or she lost something from the fact, testified to by him, that when he came home one time, Mrs. Laddness' stove was loaded on a wagon. This answer was given to a question put to him by appellee's counsel as to who let him into the premises.

Julia Wilson, the lessor of the premises, died in New Jersey in 1887, leaving a will whereby she devised all her property, both real and personal, to her brother, Frederick R. Wilson, already mentioned, and constituted him her executor; and Frederick R. Wilson, by quit-claim deed, dated October 8, 1888, conveyed the premises in question to the appellee. The evidence of payment of rent under the lease is very unsatisfactory, but we think it is reasonably clear that none was ever paid to appellee, or to any one for her, after the conveyance to her.

The substantial facts, as recited, show the condition of possession of the premises, as it existed from the making of the lease, in 1886, down to the month of June, 1890. On the ninth day of that month, at a time when Mrs. Laddness was away from the premises, Bell moved out of the house, and the appellant simultaneously moved into possession under a lease from one Clark—or, in other words, when appellant arrived there to move in, there was an expressman and one or two men moving Bell's things out of the house, and their removal was immediately followed by his moving

in. The evidence discloses a deed from one Milo S. Kellogg to Clark, a lease from the latter to appellant, a deed from Clark to Wengler, and a written instrument from appellant to Wengler.

Upon the trial of the cause the defendant asked the court to hold the law as follows:

1. The plaintiff can not, as the devisee or grantee of the lessor of Annestine Laddness, maintain this action without showing an attornment from said lessee, Annestine Laddness, to said plaintiff.

2. That if the defendant, Thomasson, came into possession of said premises peaceably and without force or fraud, the plaintiff can not maintain this action against the said defendant.

3. That if said Thomasson, the defendant, entered upon the possession of said premises peaceably and without force or fraud, through a lease from one Clark, claiming title to said premises in good faith, plaintiff can not recover in this action.

Each and all of which propositions the court refused to hold.

Thereupon the court found the issues for the plaintiff, and rendered judgment against the defendant for possession.

The refusal to hold the first proposition of law might be justified upon the ground that it is not technically supported by the evidence; for there is no evidence that appellee is either the devisee, or immediate grantee, of Julia Wilson, the lessor of Annestine Laddness; but it will be more satisfactory to follow the argument of counsel, which assumes that appellee is the grantee of the lessor.

The law of this State is well settled, that the grantee of the landlord's reversionary interest or estate, is the proper person to bring the action of forcible detainer after determination of the lease. Sec. 14, Chap. 80, R. S., entitled Landlord and Tenant; Fisher v. Smith, 48 Ill. 184; Allen v. Webster, 56 Ill. 393; Purdy v. Rakestraw, 13 Ill. App. 480; Dudley v. Lee, 39 Ill. 339; Gazzolo v. Chambers, 73 Ill. 75.

The case of Dudley v. Lee, *supra*, is relied upon by counsel for appellant as holding contrariwise. But the conten-

Thomasson v. Wilson.

tion arises out of a failure to recognize the distinction between cases where the original entry was forcible, and those where it was peaceable, and the detention alone is wrongful and tortious; and a failure to recognize that distinction has occasioned the citation by counsel of numerous authorities holding that forcible entry and detainer can not be maintained by the assignee of the landlord. The reason for the distinction is simple and obvious. In a case where the entry is forcible, the right of action is complete as soon as the entry is made, in the person whose possession is thus tortiously invaded; whereas, when the entry is made peaceably and without force, it is the detention alone that is unlawful and tortious, and no right of action exists until after demand for possession. The injured party is the only one who can bring the action, and he is, in the one case, the person entitled to the possession at the time of the tortious or forcible entry, and is, in the other case, the person entitled to the possession when the tortious withholding occurs, after demand for possession.

Mr. Justice Lawrence, in Dudley v. Lee, *supra*, most clearly states the difference.

We regard it as beyond question, that Mrs. Laddness was in possession as the tenant of Julia Wilson, and we do not think her tenancy was terminated until after appellant took possession.

It was not necessary that she should have slept in the house every night, or that she should have been there any more frequently than she was, or that she should have kept furniture in the house. She might have locked the door of the house and left it empty. She would not thereby have been relieved of her liability to her lessor, and neither could her lessor have availed herself of that fact to terminate the lease.

With the house and fence standing, and her going and coming, as the evidence leaves no doubt concerning, her possession was complete, and under the lease was rightful. So long as her lease lasted she could have maintained a suit for possession against all comers. Knight v. Knight, 3 Ill. App. 206.

Neither do we think that whether she ever paid much, little, or none at all, of the stipulated rent under the lease prior to the entry of appellant into the premises, in any way affects the right of possession as between the parties to this suit. That subject was a matter wholly between herself and her landlord. The same remarks might in substance be applied to the question of whether she ever attorned to appellee. She certainly never disputed appellee's rights under the lease, but on the contrary, she came to the witness stand in support of appellee.

An argument that her son, Bell, was so situated with reference to the parties to the lease or to the property itself, as to be able of his own act to divest Mrs. Laddness of her rights under the lease, has no support in the evidence. He was there by the mere license of his mother, and could have been put out by her at any time. Dunstedter v. Dunstedter, 77 Ill. 580.

The most that can be claimed for him under the evidence is, that during her absences he was her agent for the purpose of preserving her possession. He could not surrender her possession by himself vacating the premises. Doty v. Burdick, 83 Ill. 473.

When, therefore, the lease to Mrs. Laddness was terminated by the notices and demands that were served, the reversionary right of possession at once took effect, and appellee became entitled to the possession, and was in condition to proceed against appellant by demand and suit.

The second and third propositions of law refused by the court may be considered together.

As we have already said, Bell's occupancy of the premises was that of a mere licensee of his mother, Mrs. Laddness. Her possession was in no wise dependent upon his conduct. It existed all the time he was there, and her right of possession remained when he went out. Thomasson did not move into premises, the possession of which had been abandoned.

Notwithstanding Bell moved out, Mrs. Laddness' possession continued, and it was her possession that was invaded by Thomasson when he moved in. It makes no difference

Thomasson v. Wilson.

that Thomasson held a lease from Clark, or what Clark's title to the property may have been. We are concerned only with the right of possession, and that right in Mrs. Laddness could not be altered by Clark giving a lease to Thomasson.

It is no matter, therefore, if Thomasson went into possession peaceably and without force or fraud, and with or without a lease from Clark. He was none the less an invader of the possession of Mrs. Laddness, and when her right of possession ended, and that of her reversioner ensued, the action against Thomasson became maintainable by appellee.

The detention was unlawful in either case. And this conclusion remains, notwithstanding Clark may have made the first entry upon the premises after Bell was gone, and then executed a lease to Thomasson, and a deed to Wengler, to whom Thomasson attorned in writing. This is not an action of forcible entry and detainer, but is one of forcible detainer simply.

Other questions than those discussed have been argued by counsel for appellant, but we do not find in the argument any sufficient reason for reversing the judgment of the Circuit Court.

An inspection of the copy of the deed from Frederick R. Wilson to appellee, shown in the bill of exceptions, fails to corroborate the statement that it is signed as executor, upon which the argument is based that it was incompetent, for lack of power being given by Julia Wilson's will to her executor to make conveyance. The deed is signed and acknowledged by the grantor in his own proper person. Counsel were probably misled by the words following the grantor's name in the body of the instrument; but so used, such words are merely descriptive, and not of substance.

The evidence concerning the execution of the lease by Mrs. Laddness was, we think, ample to justify the court in admitting the lease in evidence.

The judgment of the Circuit Court was entirely correct, and will accordingly be affirmed.

*Judgment affirmed.*