# Richard Evans, Defendant in Error, v. John Evans, Plaintiff in Error.

## Gen. No. 15,762.

1.  FORCIBLE DETAINER—*where ownership of dwelling not established. Held,* under the evidence, that the defendant in this case did not establish the fact of ownership of the dwelling house for the possession of which, together with the land, the action was brought.

2. REAL PROPERTY—*when improvements presumed to become part of freehold.* If the owner of land consents to the building of a house thereon by another, and permits him to live in it without any terms being agreed on, and particularly if the owner of the lot furnishes all or about all of the money with which to build it, a presumption must obtain that the house is to become a part of the freehold.

3. LANDLORD AND TENANT—*when lessee is estopped to insist upon notice of termination.* If the tenant is in possession under a valid lease and holds over disclaiming that he is holding under his landlord and asserts an adverse right, he is, in an action of forcible detainer, estopped from claiming a notice to determine his lease.

4. LANDLORD AND TENANT—*when notice of termination not essential.* When a person goes into possession of real property and holds possession under a verbal permission to live on it with his family and no time is fixed for the duration of such possession and no rent is reserved, agreed upon or paid, he is a tenant at will and his tenancy can be terminated at any instant at the will of the landlord. Under such circumstances a mere demand for possession is all that the law requires.

5. INSTRUCTIONS—*when giving of peremptory, proper.* Where the defendant fails to introduce or offer any evidence that fairly tends to establish a defense of any character, a peremptory instruction for the plaintiff is properly\given.

Forcible detainer. Error to the Municipal Court of Chicago; the Hon. WILLIAM W. MAXWELL, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1909. Affirmed. Opinion filed October 4, 1911. Rehearing denied October 25, 1911. *Certiorari* denied by Supreme Court (making opinion final).

**Statement by the Court.** In this case the defendant in error filed a complaint in the Municipal Court against the plaintiff in error, for the unlawful detention of the possession of a two story building known as No. 943 East Sixty-fourth street in the city of Chicago. In a jury trial the court on motion of the plaintiff, instructed the jury to find the defendant guilty as charged, and that the right to the possession of the premises is in the plaintiff. Such verdict and a judgment in accordance therewith were rendered, and the defendant brings the case here on error.

In the year 1904, Richard Evans was the owner in fee of said premises which were then vacant and unoc-

cupied.    He obtained title to an undivided one-half thereof in June, 1901, by virtue of an administrator's sale and deed to pay the debts of Henry Evans, his deceased brother and partner in business, who died in September, 1897.    In the early part of 1904, John Evans, another brother of Richard, at the request of Richard, defendant in error, bought and superintended the moving of the house in question from Sixty-fourth street and Kimbark avenue to and on the lot in question, and fitted up the same as a residence for himself.    The cost of the house purchased, and of the moving and fitting the same up as a residence, amounted to about $2,500.    The undisputed evidence shows that Richard Evans paid more than $2,000 of this sum.    The record does not clearly show that John paid more than $60 of this sum out of his own money, not furnished to him therefor by his brother Richard.    After the house was ready for occupancy, John and his family lived in it for more than five years without paying any rent or taxes thereon, and was not called on for either taxes or rents by Richard.    There was no contract, written or oral, between John and Richard as to the time or term of John's occupancy. John was simply told by Richard to buy the house, move it on to the lot, fit it up for a residence, and live in it.    He did so and Richard furnished the money, or about all of it.    At this time Richard was unmarried and roomed in the house with John for six or eight months, but paid John's wife for his board. January 2, 1905, John signed a written lease to Richard for the term commencing January 1, 1905, and ending December 31, 1905, providing for an annual rent of $408.    It is not claimed by either of the parties thereto that the terms of this lease were to be enforced, and John testified positively that it was not delivered as a lease, but that the same was signed for no other purpose than to convince his family that he was earning something at a time when he was out of employ-

ment, and having some trouble with his wife on that account. After this lease had expired by its terms, John continued to live on the premises without any contract or payment in any sum as rent or otherwise. Finally John wrote a letter to Richard saying in substance that Richard should deed the property to him as his share in his brother Henry's estate, or that proceedings to enforce such a claim would be instituted. On April 13, 1909, Richard had a written demand for the immediate possession of said premises served on John, and on the next day thereafter began this suit in forcible detainer.

Charles E. Pope, for plaintiff in error.

Michael Frank Cure, for defendant in error.

Mr. Justice Duncan delivered the opinion of the court.

It is first argued by the plaintiff in error that the lower court erred in directing the verdict in this case, because the evidence in his behalf tended to prove, and did prove, (1) that he owned the house; (2) that the lot belonged to Richard; and (3) that the house was moved to the lot by Richard's permission. Under such a state of facts it is claimed that the law is that John would have a right to remove the house as his personal property, and that Richard could not prevent such removal, nor have judgment for the possession of the house. The evidence certainly and most clearly proves the last two of said propositions; but we cannot agree with his first proposition, that his evidence proves or fairly tends to prove that he is the owner of the house. There is no evidence in the record fairly tending to prove such proposition. According to the actual facts testified to in this record by John Evans and his witnesses, Richard is the owner of the house presumptively. It is true that John stated frequently

Evans v. Evans, 163 Ill. App. 203.

while a witness that he considered that he was the owner of the house, and that he was the owner of it, and that it was bought with his own money. But these were merely his conclusions, while all the evidentiary facts testified to by him as a basis for his conclusions, show that there was no proper foundation for his claim of ownership. The following questions and answers taken from his testimony will clearly show the weakness and the unreasonableness of his claim, to-wit:

Q. "Did you consider yourself the owner of the house?" A. "I certainly did."

Q. "How does it come that if you were under the impression that you were the owner of the property that you signed a lease for it as a tenant?" A. "Under the circumstances."

Q. "What circumstances?" A. "The circumstances that I was out of employment; that my brother held me under his thumb and finger; that he compelled me to do anything he wished."

He then proceeds to say that he was not forced to sign this lease, but did it simply at the request of his brother and without any compulsion whatever. He also stated that he had no deed, or contract, or conversation of any kind before the date of the lease, with his brother regarding the ownership of this house. These questions and answers then follow in his examination:

Q. "How much did you pay on the purchase price on the house out of your own means?" A. "I spent on the purchase price of the house $60.00, as near as I can remember."

Q. "Is that the total amount that you expended out of your own means to secure the purchase of the house?" A. "No sir, it was not. All I paid on the house was out of my own means."

Q. "Is it a fact that you received all the money which went into the purchase price of this property from your brother?" A. "It was given me, sir, by my brother as my own."

Q. "That is the checks were made to you?" A. "Yes."

Q. "Did he ever say to you that it was your own money?" A. "He gave it to me. That was enough."

Q. "Is it not a fact that he gave it to you for the purpose of purchasing the place for himself?" A. "No sir, he gave it to me for the purpose of purchasing it for myself."

Q. "What did he say when the money was handed over to you in reference to that?" A. "The checks speak for themselves. The checks were made out in my name."

Q. "Did you draw the conclusion by simply receiving the money that it was yours?" A. "Sure, and the house was to be mine."

Q. "And there never was any specific contract, was there?" A. "No sir."

If the owner of land consents to the building of a house thereon by another and permits him to live in it without any terms being agreed on, and particularly if the owner of the lot furnishes all or about all of the money with which to build it, the presumption must obtain that the house is to become a part of the freehold. Dunstedter v. Dunstedter, 77 Ill. 580.

The plaintiff in error did not furnish the means by which the house was built, and did not have an agreement with Richard that the house should belong to him as his absolute property. The cases cited by him, therefore, are not in point.

It is next contended by plaintiff in error that if the lease in evidence was binding between the parties, that the holding over by him without further contract, would make him a tenant from year to year; and that sixty days' notice was necessary to terminate the tenancy, and that no sufficient notice in this case was given to maintain this suit. He admits that the lease was never given as a lease, and was never intended as a binding contract, and was never relied on by either

of them.    But, be that as it may, if the lease be valid, where the tenant holding over disclaims holding under his landlord and asserts an adverse right, he is, in an action of forcible detainer, estopped from claiming a notice to determine his lease.    He was therefore not entitled to a sixty days' notice.    Brown v. Keller, 32 Ill. 151; Fusselman v. Worthington, 14 Ill. 135; Herrell v. Sizeland, 81 Ill. 457.

When one person goes into possession of real property and holds possession under a verbal permission to live on it with his family, and no time is fixed for the duration of such possession, and no rent is reserved, agreed upon or paid, he is clearly a tenant at will, and his tenancy can be terminated at any instant at the will of the lessor.    K. & S. R. R. Co. v. Horan, 131 Ill. 302; Herrell v. Sizeland, 81 Ill. 459.

There is no theory advanced by the plaintiff in error why the action of forcible detainer will not lie in this case that is sound so far as we are able to see.    The plaintiff introduced evidence that clearly proved all the material averments necessary to maintain his suit, and such evidence was not controverted.    Tenants at will are not entitled to a notice to quit.    A mere demand for possession is all that the law requires.    Cross v. Campbell, 89 Ill. App. 490.

The defendant, plaintiff in error, failed to introduce or to offer any evidence that fairly tended to establish a defense of any character.    In such state of the record there was no controversy of fact to be settled by the jury, and no affirmative right or claim of the defendant to be considered.    The court therefore properly directed the verdict in this case.    Libby, McNeil & Libby v. Cook, 222 Ill. 206; Young v. Wells Glass Co., 187 Ill. 632; Derby v. Peterson, 128 Ill. App. 496.

The judgment is affirmed.

*Affirmed.*