## Universal Vending Service Company, Appellee, v. Tony DeMeo, Appellant.

### Gen. No. 28,448.

1. FORCIBLE ENTRY AND DETAINER—*news-stand space in railroad station as tenement which may be repossessed.* A news-stand and concession space in an elevated railway station held by defendant under a written agreement for a definite term and from month to month thereafter until terminated by notice is a "tenement" within the meaning of the Forcible Entry and Detainer Act, Cahill's Ill. St. ch. 57, ¶ 2, providing that the person entitled to the possession of lands or tenements may be restored thereto in the manner therein provided, since such space is property of a permanent nature which may be holden of another.

2. FORCIBLE ENTRY AND DETAINER—*when action maintainable against "licensee" of news-stand.* Forcible detainer will lie to re-

cover a news-stand and concession space in an elevated railway station held by defendant under a written agreement with plaintiff after notice to quit given in accordance with the terms of the agreement, where, although the agreement describes the parties as "licensor" and "licensee" and the words "license," "permission" and "privileges" are used therein to describe the right and estate transferred thereunder, the agreement is substantially a lease and the parties thereto stand in the relation of landlord and tenant, and defendant's rights thereunder have been terminated by a notice to quit given in accordance with the terms of the agreement, and the space occupied constitutes a "tenement" within the meaning of the Forcible Entry and Detainer Act, Cahill's Ill. St. ch. 57, ¶ 2.

Appeal by defendant from the Municipal Court of Chicago; the Hon. Henry M. Walker, Judge, presiding. Heard in the second division of this court for the first district at the March term, 1923. Affirmed. Opinion filed November 27, 1923.

William J. Moore, for appellant; James B. Heffernan, of counsel.

Schuyler, Ettelson & Weinfeld, for appellee.

Mr. Presiding Justice Gridley delivered the opinion of the court.

On November 3, 1922, plaintiff filed a complaint in forcible detainer in the municipal court of Chicago against defendant to recover possession of the following described premises in said city: "The newsstand and concession space now occupied by Tony DeMeo in the Garfield Park station of the Garfield Park division of the Metropolitan West Side Elevated Railway Company." The court found defendant guilty of unlawfully withholding from plaintiff the possession of the premises, and that the right to possession was in it, and entered judgment on the finding on December 6, 1922, and defendant appealed.

While no bill of exceptions is contained in the transcript of the record it sufficiently appears that the cause was tried before the court without a jury on a

stipulation of facts, signed by the attorneys for the respective parties, in which it is agreed that the name of the plaintiff corporation, formerly "National Vending Service Company," was on March 2, 1922, duly changed in accordance with the statute to "Universal Vending Service Company;" that defendant entered into possession of said news-stand and concession space, located on and in the Garfield Park station of said elevated railway company, under and pursuant to an agreement executed by the parties to the present cause on December 31, 1918 (copy attached and made a part of the stipulation); that defendant claims the right of possession under no other agreement or contract; that on October 20, 1922, plaintiff caused to be served on defendant a certain notice (copy attached and made a part of the stipulation); and that at all times since the date of said agreement defendant has been in possession of said news-stand and concession space and was in such possession up to and at the time of the trial herein, having paid the "rentals" provided in said agreement up to and including but not after October 31, 1922.

In said agreement of December 31, 1918, plaintiff is designated as "licensor" and defendant as "licensee." It is provided therein that the licensor, in consideration of the covenants and agreements thereinafter mentioned to be kept and performed by the licensee, "gives permission" to the licensee to place and maintain in said station, "at such location as may be designated from time to time by the licensor, a news-stand space as per plan attached," and to sell therefrom newspapers, periodicals and such articles of merchandise as may be approved by the licensor consisting of cigars, cigarettes, tobacco and confectionery; that no vending machine can be used except by written permission of the licensor; that no confectionery, particularly chewing gum, can be sold ex-

cept in the original packages; and that the period for which such permission is given begins on January 1, 1919, and ends on January 31, 1919, "and from month to month thereafter until this license shall be terminated by the licensor upon notice, as hereinafter provided." It is further provided in the agreement that the licensee, in consideration of such permission, covenants and agrees with the licensor as follows:

*First.* To pay for said "privileges" the sum of $28 per month, in advance, at the general offices of the licensor in Chicago.

*Second.* The licensee shall keep the "premises" occupied under "this license" in a clean, neat and orderly condition and remove all dirt and waste therefrom at his own expense. He shall not, by word of mouth or by gestures, call the attention of the public to the goods or articles on the premises displayed for sale under this license. No employee of the licensor shall be engaged or employed by the licensee to attend to or take charge of the property or business of the licensee.

*Third.* The licensor shall not be liable for any damage occasioned by the failure to keep the "premises" in repair, or for any damages arising from acts or neglect of other occupants of the same "building," or of servants or employees of the licensor, or of the public.

*Fourth.* The licensee shall not use said "premises" for any purpose other than that hereinbefore specified, nor allow the "privileges" hereby authorized to be exercised by any other person, nor assign this license without the written consent of the licensor; and will not make any alteration of or upon any part of the premises, nor post or place any signs or placards thereon, except by the licensor's written consent.

*Fifth.* The licensee agrees that this license may be terminated by the licensor at any time by giving to the licensee five (5) days' notice in writing of its in-

tention so to do, and in case of such termination the licensee shall pay the proportionate amount of the sum reserved in clause *First* hereof for the time this license shall remain in force.

*Sixth.* At the expiration of this license or upon its termination as herein provided, the licensee shall cease to exercise, in or about said premises, the privileges hereby authorized and shall at once remove from said premises all articles and merchandise belonging to the licensee.

In the agreement there are also contained certain other provisions, usual in leases, as to the right of the licensor, upon the licensee making default in the payment of the sum mentioned in clause *First,* or in any of his covenants, to declare the license ended, and to expel and remove from the "premises" the licensee and his property; as to right of the licensor to cause a judgment by confession to be entered in any court of record for any sum of money which may be due from the licensee, together with $20 attorney's fees; and as to what shall be done in case the premises shall be rendered "untenantable" by fire or other casualty, or destroyed by fire. The agreement is signed in plaintiff's name by its president, and also by defendant, and is under seal.

The written notice, mentioned in the stipulation of facts as having been served on defendant on October 20, 1922, is addressed to defendant, is signed by plaintiff by its president, and is dated October 19, 1922. Defendant is therein notified that "your tenancy" in the premises, viz., the "news-stand space and concession space now occupied by you in the Garfield Park station," etc., as described in the "agreement or license" of December 31, 1918, "and your right and license to sell therefrom newspapers, periodicals, and such articles of merchandise as may be approved by the licensor, consisting of cigars, cigarettes, tobacco and confectionery, will terminate, and the same is

hereby terminated, in accordance with the terms and conditions of said agreement, on the 31st day of October, A. D. 1922, and you are now hereby required to surrender possession of said premises to the undersigned on that day.''

The only point relied upon by counsel for defendant for a reversal of the judgment is that plaintiff, under the stipulated facts, cannot maintain an action of forcible detainer to recover possession of said news-stand space. The argument is, in substance, that defendant was given a mere license or privilege, as distinguished from a lease, to occupy and use for the purposes mentioned the said space in the Garfield Park station, that the relation of landlord and tenant did not exist between the parties, and that plaintiff's only remedy is to forcibly eject defendant from the space. This plaintiff cannot lawfully do. In section 1 of the Forcible Entry and Detainer Act of this State [Cahill's Ill. St. ch. 57, ¶ 1] it is provided: ''That no person shall make an entry into lands *or tenements* except in cases where entry is allowed by law, and in such cases he shall not enter with force, but in a peaceable manner.'' (See *Doty v. Burdick,* 83 Ill. 473, 477.) In section 2 of said Act [Cahill's Ill. St. ch. 57, ¶ 2] it is provided in part:

''Sec. 2. The person entitled to the possession of lands *or tenements* may be restored thereto in the manner hereafter provided: * * *

''*Second.* When a peaceable entry is made, and the possession unlawfully withheld. * * *

''*Fourth.* When any lessee of the lands *or tenements,* or any person holding under him, holds possession without right, after the determination of the *lease or tenancy* by its own limitation, condition or terms, *or by notice to quit, or otherwise.*''

In 3 Bouvier's Law Dictionary (Rawle's 3rd Revision) the word ''tenement'' is defined as: ''Everything of a permanent nature which may be holden.'' Similar definitions are found in adjudicated cases as

collected in 8 Words & Phrases, pp. 6911-12, as, for instance: "The word 'tenement,' in legal acceptation, means property held by a tenant." In *Lenfers v. Henke*, 73 Ill. 405, 408, it is said: "Land comprehends all things of a substantial nature, which includes any ground, soil or earth whatever, and hath in its legal signification an indefinite extent upwards as well as downwards. * * * Tenement, according to the same author (Blackstone), is a word of still greater extent, and in 'its original, proper and legal sense, signifies everything that may be holden, providing it be of a permanent nature, whether it be of a substantial and sensible, or of an unsubstantial, ideal kind.' 2 Black. 17*, 18*." We think it clear that under the above definitions the news-stand space in question, even if it should not be considered as land, strictly speaking, should at least be considered as a tenement, i. e., something of a permanent nature which may be holden. And we think that the agreement of December 31, 1918, under which defendant took possession, should be regarded as a lease, subject to be terminated upon notice. While the words "license," "permission" and "privileges" appear in the instrument, the words "building" and "premises" also appear, and in the stipulation of facts it is stated that since the date of said agreement defendant has been in possession of the space, and, up to October 31, 1922, has paid the "rentals" provided for in the agreement. The term was from January 1, 1919, to January 31, 1919, "and from month to month thereafter" until terminated by plaintiff upon notice, and the "rentals" were $28 per month, payable in advance. But whether the agreement of December 31, 1918, be construed as a lease of the space to defendant, or as merely giving to him a license or privilege therein, subject to termination upon notice (which notice was duly given as provided in the agreement) we are of the opinion that, under the stipulated facts,

the action in forcible detainer, brought by plaintiff to recover the possession, will lie.

In such an action the question is not in whom is the title to the premises, but is one of possession and the right to possession. (*Doty v. Burdick,* 83 Ill. 473; *Thomasson v. Wilson,* 46 Ill. App. 398, affirmed in 146 Ill. 384; *Thomas v. Olenick,* 237 Ill. 167.) In *Dunstedter v. Dunstedter,* 77 Ill. 580, plaintiff brought an action in forcible detainer against his son to recover the possession of a certain part of a lot including a barn situated thereon. It was finally held that the father had proved such a case as entitled him to recover the possession in such an action. It appears that the father, the owner of the lot, allowed the son to occupy and use the barn in common with himself for many years, without any rent or contract, and the son finally took exclusive possession of the barn and endeavored to keep the father out of it, and thereafter the father revoked the license or privilege which he had given the son, and commenced the action. The court says, p. 582:

"The parties both occupied the building continuously, and that could not, in the absence of contract or agreement, give appellee any vested right in the property or to its possession. It, at most, could amount to no more than an implied license to occupy the property in conjunction with appellant, and, to terminate appellee's right to so occupy it, appellant only had to give notice that the license was revoked. There can be no pretense that appellee, after receiving such notice, could lawfully hold the possession, and exclude appellant from its occupancy."

In *Thomasson v. Wilson,* 146 Ill. 384, our Supreme Court, after mentioning the act of 1845 in relation to forcible entry and detainer, and certain clauses of section 2 of the Act of 1874 (now in force as amended), says (p. 392):

"It cannot, therefore, be said, that it could have been within the legislative contemplation that the re-

lation of landlord and tenant, or other contractual relation, should exist, to authorize restoration to possession of the party entitled to it under the second clause. The right is given for unlawfully withholding the possession from the person entitled to the same, where the entry has been peaceable. The purpose of the provision is to protect possessory rights in lands and tenements from invasion without force, and the detention of the premises from the person possessing such rights, and to compel resort to legal proceedings to obtain possession of lands or tenements in possession of another, although peaceable entry might be made. * * * Every detention of the premises, after demand duly made, by persons who have intruded into the possession of another, becomes an unlawful detention, within the meaning of this statute, however peaceably the entry may have been made.''

We are of the opinion that, under the stipulated facts, plaintiff had the right to recover possession of the news-stand space from the defendant in an action of forcible detainer, and that the judgment of the municipal court should be affirmed.

*Affirmed.*

FITCH and BARNES, JJ., concur.