Nos. 2--04--0346 & 2--04--0382 cons.

______________________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

______________________________________________________________________________

ROMAS DARGIS,

Plaintiff-Appellee,

v.

PARADISE PARK, INC.,

Defendant-Appellant

(Anthony J. Dini, Defendant).

)

)

)

)

)

)

)

)

)

)

)

Appeal from the Circuit Court

of Boone County.

No. 03--SC--293

Honorable

J. Edward Prochaska,

Judge, Presiding.

______________________________________________________________________________

LUCIA ZURO,

Plaintiff-Appellee,

v.

PARADISE PARK, INC.,

Defendant-Appellant.

)

)

)

)

)

)

)

)

)

Appeal from the Circuit Court

of Boone County.

No. 03--SC--306

Honorable

J. Edward Prochaska,

Judge, Presiding.

______________________________________________________________________________

JUSTICE BOWMAN delivered the opinion of the court:

After two separate small claims bench trials, defendant Paradise Park, Inc. (PPI), was found liable for conversion, illegal eviction, and negligent failure to protect property.  PPI seeks to reverse the trial court's rulings.  Because both cases arise from a common set of events, the cases have been consolidated on appeal.  We affirm the trial court's decisions.

I. BACKGROUND FACTS

Plaintiff Romas Dargis filed a small claims complaint on October 21, 2003, to recover the value of a deck that PPI and its vice-president, Anthony J. Dini in his individual capacity, allegedly converted for their own uses at a trailer park owned by PPI.  Shortly thereafter, on November 4, 2003, 
plaintiff Lucia Zuro filed a small claims complaint to recover the value of property that was damaged or stolen allegedly as a result of PPI illegally evicting her from its trailer park.  Zuro served summons upon PPI, and Dargis served summons upon Dini.  Attorney Mark E. Thompson subsequently filed appearances on behalf of Dini in the Dargis case and on behalf of PPI in the Zuro case.  On November 25, 2003, attorney Thompson filed separate answers to the two complaints, denying all of the allegations.

A. Bench Trials

On January 13, 2004, and on February 3, 2004, Judge J. Edward Prochaska conducted separate bench trials on the Dargis case and on the Zuro case, respectively.  After considering testimony and exhibits, Judge Prochaska issued two written opinions, making findings of fact and conclusions of law, and explicitly incorporating his opinion on the Dargis case into his opinion on the Zuro case.  The following are the collective findings and conclusions of Judge Prochaska.

1. 
Findings of Fact

Zuro contracted with PPI to rent seasonal recreational vehicle (RV) campsite S50 at Paradise Park during the 2003 season, which ran from April 11 to October 26, 2003 (weather permitting), for a fee of $1,100, payable in equal one-third installments by May 31, 2003.  The site contract, entitled "Seasonal Site Contract," permitted Zuro to maintain a trailer on the campsite, to use and enjoy common facilities, and to entertain visitors who registered with and paid a daily fee to PPI.  However, it explicitly stated: "This contract creates a license and does not create any ownership or leasehold interest in any RV site or in Paradise Park."  The contract also stated:

"No site Alterations such as bushes, trees or permanent fixtures may be done with out consent of management.  Decks are permitted, with approval of the management, and a signed deck contract.  Maximum width of decks is 10 ft.  ***  Any decks, bushes, patio blocks, etc installed on your site must remain when you leave."

PPI reserved the right to terminate the contract, as well as the use and enjoyment of the common facilities at Paradise Park, for violation of terms of the contract.  PPI also reserved the right to assign RV sites at the expiration or termination of the contract, but restricted the trading or reassignment of sites and contracts without its express permission.  The contract contained an exculpatory clause, the terms of which hold PPI harmless, release PPI from liability, and provide a waiver of all causes of action against PPI, for any property damage "related to occupancy and use of an RV site."  Finally, the contract required all seasonal campers to maintain insurance for any and all property damage.

Zuro occupied site S50 and owned a 10-foot by 30-foot portable wood deck, which was maintained on the site.  Dargis, who was Zuro's guest at the campsite and who had not signed a site contract with PPI, purchased that deck from Zuro for $5,000.  He subsequently maintained and improved it prior to selling it to an unnamed third party in the fall of 2003.

At some time during the 2003 season, PPI promulgated a new policy that required each camper who had a deck to sign a deck contract that charged a $200 fee in order to maintain a deck on a campsite.  Zuro and Dargis opposed this policy and organized a group of campers to protest it.  Dargis then began to remove the deck from site S50, but PPI's security agents prevented him from doing so.

On October 18, 2003, Zuro and Dargis were evicted from the campsite and were given two hours to pack their belongings, after Dini, an agent of PPI, gave Zuro a document entitled "Termination of Contract," which stated:

"As of October 18, 2003 at 2:30 P.M. your contract has been terminated affective [
sic
] immediately.  As of this point in time you are no longer allowed on this property and are requested to leave immediately."

As a result of the sudden eviction, Zuro was forced to leave at the campsite many of her personal belongings both inside and outside the trailer.  When PPI permitted Zuro to return to her trailer on October 30, 2003, many of her items were damaged or missing.

Although no reason for the eviction was given on October 18, 2003, Dini testified at trial that Zuro and Dargis were evicted in order to prevent them from removing the deck, which PPI believed to be its property.  At trial, Zuro and Dargis testified that they were evicted in retaliation for their efforts to organize other campers to oppose the new deck policy.  Judge Prochaska determined that a combination of the two reasons probably led to the eviction.

2. 
Conclusions of Law

After hearing the evidence at the trials, Judge Prochaska found that PPI and Dini unlawfully converted the deck for their own uses and unjustly enriched themselves at Dargis's expense.  He found that PPI unlawfully evicted Zuro and negligently failed to protect Zuro's property.

Judge Prochaska's unlawful conversion determination was based upon the contract between Zuro and PPI.  He found that Zuro's ownership of the deck was undisputed, that the contract did not preclude her from selling the deck, and that the contract did not prevent subsequent sale of the deck to a third party.  Because Dargis was not a party to the contract between Zuro and PPI, PPI had no legal right to prevent him from removing the deck once he purchased it from Zuro.  When they prevented Dargis from removing the deck, PPI and Dini unlawfully converted the deck.  Judge Prochaska consequently awarded damages to Dargis.

Because PPI had no legal right to prevent the removal of the deck, Judge Prochaska reasoned that preventing removal of the deck was not a legally justifiable reason to evict Zuro from the campsite.  He also determined that Zuro's opposition to PPI's new deck policy was not a legally justifiable reason for the eviction, which was a vindictive and cruel attempt at public humiliation.  Because PPI had no contractual basis for the eviction, the eviction was illegal.

Finally, the nature and circumstances of the illegal eviction led Judge Prochaska to determine that PPI owed Zuro, a tenant, the duty to protect her property.  He reasoned that although a landlord generally does not owe his tenant a duty to prevent unforeseeable criminal acts of a third person, Zuro's public eviction made it foreseeable that her property could be a target for thieves and vandals.  Because PPI failed to safeguard Zuro's property and trailer, its negligence was the proximate cause of her subsequent loss of property.  Judge Prochaska consequently awarded damages to Zuro.

B. Posttrial Motions

On February 20, 2004, defendants filed motions to vacate the judgments or to grant them new trials.  In both cases, Judge Prochaska denied the motions with respect to the merits of the cases.  In the Dargis case, however, defendants argued that judgment was erroneously entered against both PPI and Dini because PPI was not a defendant in the case as a result of not being served.  In an order dated March 23, 2004, Judge Prochaska dismissed Dini as a party in the matter, vacated the judgment against him, and ruled that the judgment remained in effect against PPI.  PPI now appeals from Judge Prochaska's rulings in both cases.

II. DISCUSSION

On appeal, PPI raises five issues: (1) whether the judgment against it is void in the Dargis case because PPI was not served; (2) if jurisdiction is proper, whether Dargis proved the requisite elements of conversion; (3) whether Zuro was evicted illegally; (4) whether PPI had a duty to protect Zuro's property; and (5) whether the exculpatory clause in the site contract protects PPI from any liability for damages to and loss of Zuro's property.  We will address each issue in turn, but first we must address the procedural errors committed by PPI on appeal.

First, PPI challenges many of the factual findings upon which the trial court's legal conclusions are based and asks us to accept its version of certain facts (for example, that Zuro had no preexisting ownership interest in the deck).  However, we can review the trial court's factual findings only if we have a sufficiently complete record of the trial proceedings, which we do not.  A report of proceedings is not in the record before us.  In the event of the absence of a report of proceedings, Supreme Court Rule 323(c) (166 Ill. 2d R. 323(c)) authorizes a bystander's report, and Rule 323(d) (166 Ill. 2d R. 323(d)) authorizes an agreed statement of facts.  Neither of these alternatives is provided to us in this case.  It is the appellant's burden to preserve the trial evidence and to present a sufficiently complete record of the trial proceedings to support a claim of error on appeal.  
Foutch v. O'Bryant
, 99 Ill. 2d 389, 391-92 (1984).  In the absence of such a record, we must presume that the trial court's decisions are in conformity with the law and have a sufficient factual basis.  
Foutch
, 99 Ill. 2d at 392.  Fortunately for the appellant in this case, it supplemented the record with one trial exhibit, the seasonal site contract, which, when viewed alongside Judge Prochaska's two written decisions, provides sufficient information for us to decide the issues in this case.  In the absence of a report of proceedings or a suitable alternative thereto, however, we presume that Judge Prochaska's factual findings, as recited above, have sufficient basis in the evidence, and therefore we adopt them.  Nonetheless, "[a]ny doubts which may arise from the incompleteness of the record will be resolved against the appellant."  
Foutch
, 99 Ill. 2d at 392.

Second, we note that PPI's brief fails to comply with Supreme Court Rule 341(e)(3) (188 Ill. 2d R. 341(e)(3)).  PPI failed to include the applicable standards of review with citations to authority.  In this case, different standards of review are applicable to the jurisdictional issue and to the issues arising directly from the bench trials.  These standards are set out below.

A. The Trial Court Had Jurisdiction Over PPI

PPI argues that Judge Prochaska erred by entering judgment against it in the Dargis case because it had not been served and it never filed an appearance in the case.  It contends that Dini was the only party served and that he was served in his individual capacity, not as the vice-president of PPI.  Additionally, PPI states that attorney Thompson confirmed with the clerk of the circuit court that Dini was the only defendant in the case.  This confusion apparently arose because, although the complaint lists "Anthony J. Dini (VP)" and "Paradise Park Inc." as separate defendants, the summons served upon Dini lists the defendant as "Paradise Park Inc. (Anthony J. Dini)."  According to PPI's brief, Judge Prochaska ruled at trial that there were two defendants.  We have no record of that ruling or the reasons therefor.

Ordinarily, if the trial court heard disputed evidence and made factual findings, thereby creating a mixed question of law and fact regarding proper service of summons, we would apply the clearly erroneous standard of review, which permits reversal of the trial court's findings only if we are left with the "definite and firm conviction" of an erroneous finding.  
People ex rel
.
 Waller v. Harrison
, 348 Ill. App. 3d 976, 979-80 (2004).  However, as there is no transcript of the trial, there is no basis for holding that the trial court's finding of two defendants was clearly erroneous.  See 
Foutch
, 99 Ill. 2d at 392.

Although we lack a record of the proceedings, even if we assume that the trial court heard no testimony but rather decided the jurisdictional issue solely on the basis of documentary evidence, the trial court's decision must be affirmed because PPI waived its objection to improper service.  In this circumstance, we apply a 
de novo
 standard of review.  
Gaidar v. Tippecanoe Distribution Service, Inc.
, 299 Ill. App. 3d 1034 (1998).  The record in the Dargis case contains an answer filed by Attorney Thompson.  The answer identifies the defendant as "PARADISE PARK, INC. (ANTHONY J. DINI)," but shortens the identification to "Paradise Park," not "Anthony J. Dini."  Additionally, the signature line reads "PARADISE PARK INC. / BY: [Signature of Mark E. Thompson] / MARK E. THOMPSON, its Attorney."  This is the same signature line used by attorney Thompson in the Zuro case, in which there is no dispute that PPI is the defendant.  Moreover, if Dini in his individual capacity was the party filing the answer, the signature line should have read, "
his
 attorney" instead of "
its
 attorney."  Therefore, the answer in this case was filed on behalf of PPI, which consequently made a general appearance and consented to jurisdiction despite not being served.  
Fleming v. Walls
, 65 Ill. App. 3d 352, 355 (1978).  Accordingly, we hold that the trial court had jurisdiction over PPI.

B. Review of the Trial Court's Rulings on the Merits

PPI challenges the trial court's rulings arising from the trial.  Because these rulings were made following a bench trial, the applicable standard of review is whether the trial court's judgment is against the manifest weight of the evidence.  
Judgment Services Corp. v. Sullivan
, 321 Ill. App. 3d 151, 154 (2001).  "A judgment is against the manifest weight of the evidence only when an opposite conclusion is apparent or when findings appear to be unreasonable, arbitrary, or not based on evidence."  
Judgment Services Corp.
, 321 Ill. App. 3d at 154.  To the extent PPI challenges the trial court's rulings on purely legal grounds, we review the trial court's rulings 
de novo
.  
In re Marriage of Ackerley
, 333 Ill. App. 3d 382, 398 (2002).

1. PPI Converted the Deck

To prove conversion, a plaintiff must establish (1) that he has a right to the property; (2) that he has an absolute and unconditional right to the immediate possession of the property; (3) that he made a demand for possession; and (4) that the defendant wrongfully and without authorization assumed control, dominion, or ownership over the property.  
Cirrincione v. Johnson
, 184 Ill. 2d 109, 114 (1998).  PPI argues that Dargis failed to establish the first and second prongs.  We disagree.

Dargis established that he has a right to the deck because the trial court found that Zuro undisputedly owned the deck and that she rightfully sold it to Dargis.  We must accept this finding because there is no evidence in the record to contradict it.  
Foutch
, 99 Ill. 2d at 392.  The record does not indicate whether the deck existed on campsite S50 prior to Zuro occupying the site (which presumably would evidence PPI's ownership of the deck) or whether Zuro constructed the deck (which presumably would evidence Zuro's ownership of the deck).  Additionally, nothing in the record indicates error in the trial court's determination that the deck is portable, and thus the deck cannot be a permanent fixture on the campsite under the terms of the contract.  Therefore, the trial court's findings are not against the manifest weight of the evidence.

Dargis also established that he has an absolute and unconditional right to the immediate possession of the deck.  The trial court found that Dargis validly purchased the deck from Zuro and that the deck remained at the site while Dargis was Zuro's guest, which was from after the sale of the deck until they were forced to vacate.  That both Zuro and Dargis used the deck continuously during that time evidences that, at most, Zuro had nothing more than an implied license to use the deck in conjunction with Dargis, which could be revoked upon notice.  See 
Dunstedter v. Dunstedter
, 77 Ill. 580 (1875).  Zuro, therefore, did not have a vested interest in the deck or its possession.  Thus, the issue becomes whether PPI has an interest in the deck under the contract that requires the deck to remain with the land, even though the trial court found that Dargis was not a party to the contract.  We find that PPI has no interest in the deck.

This decision is guided by reasoning that has been applied in the context of conditional sales contracts.  Under conditional sales contracts, vendors retain title in personal property until full payment is made by a vendee.  
National Bank of the Republic v. Wells-Jackson Corp.
, 358 Ill. 356, 364 (1934).  Sometimes, the sales contract provides that the chattel retains its status as personal property despite its annexation to real estate leased by the vendee, as tenant.  See 
National Bank of the Republic
, 358 Ill. at 364.  Under such circumstances, the general rule is that the sales contract is enforceable between the parties thereto and also against any successor in interest to the rights of the vendee, as tenant, so long as the chattel can be removed without material injury to the real estate or to the usefulness of the chattel.  
National Bank of the Republic
, 358 Ill. at 364.  The reasons for this principle are clear.  It is a general and a well-established principle that no one can transfer a better title than she has.  
Drain v. LaGrange State Bank
, 303 Ill. 330, 335 (1922).  Thus, if the vendee, as tenant, defaults in the terms of an enforceable lease agreement with a lessor and the lessor consequently takes possession of the real estate with the chattel thereon, the lessor succeeds to the rights of the vendee, as tenant, in the real estate but has no interest to succeed to in the chattel.  
National Bank of the Republic
, 358 Ill. at 366.  Under the sales contract, the chattel retains its status as the personal property of the vendor, and thus the vendee does not own the chattel.  
National Bank of the Republic
, 358 Ill. at 366.  Despite its succession in the interests of the vendee, as tenant, the lessor cannot and does not acquire any greater title to the chattel than the vendee has.  
National Bank of the Republic
, 358 Ill. at 366.  Therefore, the lessor has an interest in the real estate but, given the terms of the agreement between the vendor and the vendee, not in the chattel annexed thereto, so long as its removal causes no material injury to the real estate or to the chattel's usefulness.  
National Bank of the Republic
, 358 Ill. at 366.

The same reasoning is applicable where a licensor licenses his personal property to a licensee who then annexes that chattel to the real estate of a third-party successor in interest to the licensee's rights in the real estate.  Thus, in this case, PPI cannot take an ownership interest in the deck because Zuro had none to give.  By virtue of the seasonal site contract, PPI is the successor in interest to Zuro's right to site S50.  By virtue of the implied license between Zuro and Dargis, the deck on site S50 remained the personal property of Dargis, the licensor.  Therefore, when PPI removed Zuro from site S50, it succeeded to Zuro's rights in the real estate but had no rights to succeed to Zuro's rights in
 
the deck because, as between Dargis and Zuro, the deck remained the personal property of Dargis.  PPI could not and did not acquire any greater title to the deck than Zuro had.  Because Zuro had no ownership interest in the deck, PPI has no ownership interest in the deck.

Further weakening PPI's ownership claim is the fact that the trial court found the deck to be portable, meaning the deck was not annexed to the real estate.  Additionally, there is no evidence in the record that the deck could not be removed without material injury to the real estate or to the deck's usefulness.  Because, given the facts of this case, there is no basis upon which PPI can claim an ownership interest in the deck, Dargis had an absolute and unconditional right to the immediate possession of the deck.

For the foregoing reasons, we reject PPI's challenges to the trial court's conclusion that PPI converted the deck.  Therefore, we affirm the trial court's decision on this issue.

2. The Eviction of Zuro Was Illegal

PPI challenges the trial court's ruling that the removal of Zuro from the campsite was an illegal eviction, on the grounds that the trial court erred in finding that the seasonal site contract constituted a lease.  We affirm the trial court's ruling.

The only question raised by PPI on this issue is whether the seasonal site contract constitutes a license or a lease.  PPI argues that the contract creates a license because the contract explicitly declares that it is a license granting use of a specific campsite and that it creates no ownership or leasehold interest in any RV site or in Paradise Park.  Because a license is revocable at any time at the will of the licensor (
Soderholm v. Chicago National League Ball Club, Inc.
, 225 Ill. App. 3d 119, 124 (1992)), PPI asserts that in this case an illegal eviction is impossible.

A license grants the licensee the right to enter upon the licensor's land and use it for a specific purpose, without giving up the licensor's legal possession and control over the property.  
North Avenue Properties, L.L.C. v. Zoning Board of Appeals
, 312 Ill. App. 3d 182, 189 (2000).  The appearance of the term "license" in an instrument, however, does not necessarily make it so.  See 
Universal Vending Service Co. v. DeMeo
, 231 Ill. App. 30 (1923).  Whether a contract is a license or a lease is determined, not from the language used, but rather from the legal effect of its provisions.  
Jackson Park Yacht Club v. Department of Local Government Affairs
, 93 Ill. App. 3d 542, 546 (1981).

The existence of a lease depends upon the intention of the parties.  
Jackson Park Yacht Club
, 93 Ill. App. 3d at 546.  Essential requirements of a lease include the following: (1) a definite agreement as to the extent and bounds of the property; (2) a definite and agreed term; and (3) a definite and agreed rental price and manner of payment.  
Jackson Park Yacht Club
, 93 Ill. App. 3d at 546-47.

In this case, the seasonal site contract contains the essential requirements of a lease.  First, there is a definite agreement that the site identified as S50 is the extent and bounds of the property.  Second, April 11 to October 26, 2003, is the agreed term; the caveat of "weather permitting" does not make the term so indefinite as to nullify the intention of the parties.  Third, $1,100, payable in equal one-third installments by May 31, 2003, are the definite and agreed rental price and manner of payment.

Moreover, the contract itself belies PPI's contention that the contract gives no estate to Zuro. The contract gives Zuro an exclusive interest in site S50 from April 11 to October 26, 2003.  Under the contract, no one, not even PPI, can remove Zuro from the site unless and until the contract expires or is terminated.  The contract cannot be terminated unless Zuro violates its terms.  Thus, because PPI's right to possess the site is restricted by the terms of the contract, and PPI does not have the right to remove Zuro at will, the contract creates for Zuro an estate in the site.  Additionally, because Zuro occupied the site by right for a specific term, she was a tenant.  See 
Urban Investment & Development Co. v. Maurice L. Rothschild & Co.
, 25 Ill. App. 3d 546, 552 (1975).

Finally, the fact that the agreement was for a specific purpose does not transform the contract into a license.  An agreement does not fail as a lease simply because the premises may be used only for certain purposes.  
People v. Chicago Metro Car Rentals, Inc.
, 72 Ill. App. 3d 626, 630 (1979).  For example, in 
Gustin v. Barney
, 250 Ill. App. 209 (1928), the court upheld the existence of a lease even though the lessee was given the right only to hunt upon the premises and the lessor reserved all other uses.  Therefore, we hold that the contract in this case constitutes a lease agreement between PPI and Zuro.

For the foregoing reasons, we reject PPI's challenges to the trial court's conclusion that PPI illegally evicted Zuro.  Therefore, we affirm the trial court's decision on this issue.

3. PPI Had a Duty to Protect Zuro's Property and Was Negligent in that Duty

PPI challenges the trial court's ruling that it was negligent in its duty to protect Zuro's property after the eviction.  We affirm the trial court's ruling.

A successful negligence action requires proof of the existence of a duty, a breach of that duty, and an injury proximately caused by the breach.  
Elizondo v. Ramirez
, 324 Ill. App. 3d 67, 72 (2001).  PPI insists that, as a licensor, it owes no duty to Zuro, a licensee, other than not to willfully and wantonly injure her, which it did not, and thus cannot be liable for negligence.  We summarily reject this contention.  Having ruled that Zuro was not a licensee but rather was a tenant, we need not reach the merits of PPI's argument.

However, whether a duty exists is a question of law.  
Hills v. Bridgeview Little League Ass'n
, 195 Ill. 2d 210, 228 (2000).  Therefore, we must decide whether the trial court properly held that PPI owed Zuro a duty to protect her property from theft and damage caused by third parties.

Generally, one does not have a duty to protect others from criminal acts by third parties.  
Jackson v. Shell Oil Co.
, 272 Ill. App. 3d 542, 547 (1995).  An exception exists, however, where the criminal act was reasonably foreseeable and a special relationship exists between the injured party and the party with the alleged duty.  
Jackson
, 272 Ill. App. 3d at 547.

In this case, there is nothing in the record to indicate that the theft and damage to Zuro's property was not foreseeable.  The trial court found that the eviction was done publicly.  To that extent, it is reasonable to conclude that others at the campground were aware that anything left at the campsite would not be protected.  Moreover, Zuro's property remained unsecured for 12 days, giving thieves and vandals ample opportunity to loot and to destroy.  Therefore, we find that the theft and damage to Zuro's property was foreseeable.

We also find that, although there exists no special relationship between PPI and Zuro, PPI assumed a duty to protect.  Generally, no special relationship exists between a landlord and a tenant, and thus a landlord has no duty to protect tenants against foreseeable third-party criminal acts.  
Rowe v. State Bank of Lombard
, 125 Ill. 2d 203, 215-16 (1988).  Such a duty arises, however, when a landlord, under the facts of the case, assumed the duty.  
Shea v. Preservation Chicago, Inc.
, 206 Ill. App. 3d 657, 661 (1990).  When a landlord exercises control over a portion of a leased premises, the landlord assumes a duty to exercise such control in a reasonably safe manner.  
Shea
, 206 Ill. App. 3d at 661.  Whether this retention of control includes a duty to protect tenants against foreseeable third-party criminal acts depends upon the normal and usual function of such control and the particular circumstances of the case.  
Shea
, 206 Ill. App. 3d at 661.  Consequently, several jurisdictions have held that a landlord assumes no duty to care for the property that a former tenant has left behind when the landlord exercises control over the premises after the tenancy has been terminated by lawful eviction.  See, 
e.g.
, 
Banks v. Korman Assoc.
, 218 N.J. Super. 370, 372, 527 A.2d 933, 934 (App. Div. 1987); 
Ringler v. Sias
, 68 Ohio App. 2d 230, 232, 428 N.E.2d 869, 870 (1980); 
Conroy v. Manos
, 679 S.W.2d 124, 127 (Tex. App. 1984).  The exception is when the landlord chooses to care for the property.  See, 
e.g.
, 
Christensen v. Hoover
, 643 P.2d 525, 528 (Colo. 1982) (en banc).  In this case, however, the problem is not that PPI chose to care for Zuro's property but rather that it exercised control over the campsite via an unlawful eviction.  Because the eviction was unlawful, the converse of the general principle applies, and thus the law imposes upon PPI the duty to protect the property left behind by Zuro.  Where an unlawful eviction induces a tenant to forgo remedies or precautions against the risk of theft and damage, any consequential harm results from the landlord's negligent failure to protect as fully as if the landlord had created the risk.  See 
Rowe
, 125 Ill. 2d at 218; Restatement (Second) of Torts § 324A, Comment 
e
 (1965).

For the foregoing reasons, we reject PPI's challenges to the trial court's conclusion that PPI had a duty to protect Zuro's property.  Therefore, we affirm the trial court's decision on this issue.

4. The Exculpatory Clause Does Not Protect PPI from Liability

PPI avers that the seasonal site contract protects it from liability for damage to Zuro's personal property.  We disagree.

In this case, the contract contained an exculpatory clause, through which Zuro agreed "to hold harmless, to release from liability, and to waive all causes of action against *** [PPI] and its officers and employees for *** property damage related to occupancy and use of an RV site and the use and enjoyment of the common facilities *** at Paradise Park."  Generally, exculpatory clauses, though disfavored and construed against the drafter, are enforceable, unless (1) enforcement would be against a settled public policy of the state, or (2) something in the social relationship of the parties militates against enforcement.  
Harris v. Walker
, 119 Ill. 2d 542, 548 (1988).  Under certain circumstances, exculpatory clauses may be a total bar to a plaintiff's negligence claim.  
Harris
, 119 Ill. 2d at 548.

The trial court presumably found that the exculpatory clause in this case was not a total bar to Zuro's negligence claim because it found PPI to be liable for Zuro's damages, even after PPI raised this issue in its request for reconsideration.  The trial court's reasons for its decision, however, are not in the record.  Furthermore, the record provides no clue as to whether the trial court found the exculpatory clause to be unenforceable as a matter of public policy or because of a social relationship between the parties.  Thus, the record provides us with nothing to review.  As a result, we must assume that the trial court's decision was not against the manifest weight of the evidence.  
Foutch
, 99 Ill. 2d at 393.

Regardless, public policy does not allow exculpatory contracts that protect against liability for willful and wanton misconduct.  
Falkner v. Hinckley Parachute Center, Inc.
, 178 Ill. App. 3d 597, 604 (1989).  Consequently, it would be against public policy to protect PPI in this case, where its unlawful eviction of Zuro was, as Judge Prochaska described it, "vindictive, cruel, designed to publicly humiliate her, and without basis in the site contract."  Therefore, we affirm the trial court's decision on this issue.

III. CONCLUSION

Defendant Paradise Park, Inc., has failed to show that the trial court's rulings were either against the manifest weight of the evidence or legally erroneous.  Therefore, the judgment of the circuit court of Boone County is affirmed.

Affirmed.

HUTCHINSON and CALLUM, JJ., concur.