NOTICE

Decision filed 10/13/06. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

NO. 5-05-0029

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | |
|---|---|
| SMITH, ALLEN, MENDENHALL, EMONS & SELBY, a Partnership, | ) Appeal from the<br>) Circuit Court of<br>) *Madison County* |
| Plaintiff-Appellant and Cross-Appellee, | ) |
| | ) |
| v. | ) No. 99-L-120 |
| | ) |
| THE THOMSON CORPORATION; WEST GROUP, a Division of The Thomson Corporation; WEST PUBLISHING CORPORATION; WEST PUBLISHING COMPANY; and THE THOMSON LEGAL PUBLISHING COMPANY, | ) |
| | ) |
| | ) |
| | ) |
| | ) Honorable |
| | ) Lewis E. Mallott, |
| Defendants-Appellees and Cross-Appellants. | ) Judge, presiding. |

_____

PRESIDING JUSTICE SPOMER delivered the opinion of the court:

The National Basketball Association has an unwritten rule that is applicable to this case: "no harm, no foul."  The named plaintiff and class representative in this class action lawsuit, a law partnership, appeals an order of the circuit court of Madison County denying the class prejudgment interest and attorney fees.  The defendants to the suit cross-appeal, challenging the underlying judgment entered against the defendants by the court.  For the reasons that follow, we reverse the circuit court's judgment against the defendants, rendering moot the appeal of the plaintiff.

In February 1999, the plaintiff filed a complaint alleging breach of contract, common law fraud, and violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (Illinois Consumer Fraud Act) (815 ILCS 505/1 *et seq.* (West 1998)) and Minnesota's consumer fraud statute (Minn. Stat. §325F.68 *et seq.* (1996)).  The trial court granted in part

1

the defendants' motion to dismiss and granted the plaintiff leave to amend its complaint. The plaintiff filed its amended complaint in June 1999, reasserting all the claims set forth in the original complaint. The defendants again moved for a dismissal of the complaint and for a summary judgment. In December 1999, the trial court denied the defendants' motions and granted the plaintiff's motion for class certification. Additional motions were filed and ruled upon, and in June 2003, the plaintiff voluntarily dismissed its claims for common law fraud and breach of contract, leaving only the Illinois and Minnesota statutory consumer fraud claims. The trial court permitted the dissemination of a class notice, and the Illinois and Minnesota statutory consumer fraud claims were tried without a jury in September 2004. Prior to the commencement of the trial, two other class representative plaintiff law firms withdrew from the action as class representatives, leaving the above-described law partnership as the only class representative plaintiff.

The crux of the Illinois and Minnesota statutory consumer fraud claims, put succinctly, was that the defendants defrauded the law partnership and other members of the class (hereinafter collectively referred to as the plaintiff) by adding, on a *pro rata* basis, a $6 per CD-ROM shipping-and-handling charge to the monthly billing statements sent to the plaintiff pursuant to a subscription agreement between the plaintiff and the defendants, without identifying the added charge and in contravention of the defendants' previous practice of not charging customers for shipping and handling. The plaintiff also alleged that the $6 per CD-ROM shipping-and-handling charge exceeded the actual cost of "transportation and handling" and that the plaintiff had suffered damages as a result of the discrepancy between the amount charged for shipping and handling and the actual cost of shipping and handling. Following the trial, a judgment in the amount of $8,545,459 was entered for the plaintiff in an order filed in January 2005. It is from that order that both parties now appeal. Additional facts necessary to the disposition of this appeal will be

provided throughout this opinion.

We begin by reciting our standard of review. Following a bench trial, we will not reverse the judgment of the trial court unless the judgment is against the manifest weight of the evidence. *Dargis v. Paradise Park, Inc.*, 354 Ill. App. 3d 171, 177 (2004). A judgment is against the manifest weight of the evidence only when an opposite conclusion is apparent or when findings appear to be unreasonable, arbitrary, or not based upon the evidence presented at the trial. *Dargis*, 354 Ill. App. 3d at 177. In the case at bar, many reasons exist to reverse the order of the trial court, including, *inter alia*, the plaintiff's failure to prove the existence of a misrepresentation and the defendants' intent for the plaintiff to rely thereupon, issues related to the voluntary-payment doctrine, and errant methodology in the computation of the amount of the purported damages. However, the most fundamental defect of the order, and the grounds for our reversal of the order, derives from the failure of the plaintiff to establish that it suffered any damages at all, an essential element of its Illinois and Minnesota statutory consumer fraud claims.

To prove a private cause of action under the Illinois Consumer Fraud Act, a plaintiff must establish the following: (1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) *actual damage* to the plaintiff (5) proximately caused by the deception. *Avery v. State Farm Mutual Automobile Insurance Co.*, 216 Ill. 2d 100, 180 (2005). Neither the Illinois Consumer Fraud Act nor the *Avery* decision defines the term "actual damage." However, Black's Law Dictionary defines "actual damages" as "[*r*]*eal, substantial*[*,*] *and just damages*, or the amount awarded to a complainant in compensation for his *actual and real loss or injury*, as opposed on the one hand to 'nominal' damages, and on the other to 'exemplary' or 'punitive' damages." (Emphasis added.) Black's Law Dictionary 390 (6th ed. 1990). Damages must be proven by the

3

plaintiff (*Kohlmeier v. Shelter Insurance Co.*, 170 Ill. App. 3d 643, 654 (1988)), and in the absence of a mental state equivalent to that of an intentional tort, damages may not be presumed under the Illinois Consumer Fraud Act. *Duran v. Leslie Oldsmobile, Inc.*, 229 Ill. App. 3d 1032, 1041 (1992). In the context of claims for fraudulent misrepresentation, Illinois courts have adopted the benefit-of-the-bargain rule, whereby damages are determined by assessing the difference between the actual value of the product sold and the value the product would have had at the time of the sale if the representations had been true. *Gerill Corp. v. Jack L. Hargrove Builders, Inc.*, 128 Ill. 2d 179, 196 (1989).

Under the Minnesota consumer fraud statute, a plaintiff must "prove the existence of an injury to sustain a cause of action." *D.A.B. v. Brown*, 570 N.W.2d 168, 172 (Minn. App. 1997). Damages under the Minnesota consumer fraud statute are calculated, as are damages under Minnesota law for fraudulent representations inducing a contract, using the "out-of-pocket" rule: the measure of actual damages is the difference between what the defrauded person paid and what he or she received. *Yost v. Millhouse*, 373 N.W.2d 826, 830 (Minn. App. 1985).

Applying these principles, even if we were to assume without deciding that some kind of fraud was perpetuated in this case, the plaintiff still would not prevail, because no damages have been proven. As explained above, the plaintiff claims to have suffered damages as a result of the added shipping-and-handling charges, those damages being in the amount of the difference between the amount charged and the actual cost of shipping and handling. Indeed, the order of the trial court, which was grafted virtually verbatim from the plaintiff's proposed judgment order, found that the plaintiff had been damaged in that amount and awarded damages accordingly. However, neither the plaintiff's theory of injury and damages nor the trial court's order adopting that theory is supported by the evidence adduced at the trial. With regard to the existence of any damages at all, the trial testimony of Doug Mendenhall, a

4

member of the class representative plaintiff law partnership, was that anytime his law firm purchased a product, Mendenhall did a cost-benefit analysis, and if Mendenhall believed the cost was reasonable and the product useful to the firm in its practice, Mendenhall would continue to purchase the product or would refrain from cancelling the product. Mendenhall further testified that with regard to the price increase at issue in this case, he (1) recognized the price increase, (2) conducted a cost-benefit analysis, and (3) chose to continue receiving the CD-ROMs. Mendenhall also conceded that his firm's agreement with the defendants allowed the defendants to raise the price of the CD-ROMs "at any time for any reason without notice" and that at the time in question he could have cancelled the CD-ROM service "at any time for any reason without notice." Mendenhall did not testify that his firm had been damaged in any way by continuing to receive and pay for the CD-ROMs, nor did he testify that the firm was not receiving the benefit of the bargain it had struck with the defendants at all times or was out of pocket any money by having paid the price requested. To the contrary, as described above, Mendenhall testified that the firm continued to subscribe to the CD-ROMs after Mendenhall had completed his cost-benefit analysis, evidence that the firm had not suffered any damages.

In light of Mendenhall's testimony and the lack of any other evidence substantiating actual damages to the plaintiff, the plaintiff's assertion, unsupported by citation to any testimony adduced at the trial or to any legal authority in contradiction of the aforementioned legal principles regarding the assessment of damages under the Illinois and Minnesota consumer fraud statutes, that the plaintiff was damaged in the amount of monies paid "in excess of the actual cost of transportation" is disingenuous and unpersuasive. Because the plaintiff has proven no damages, the plaintiff's Illinois and Minnesota statutory consumer fraud claims must fail, and the order of the circuit court of Madison County, which is not supported by the evidence, must be reversed.

5

Because we have already determined that the trial court's order must be reversed, we need not address the many other problematic aspects of the order, although we note that even if we were to find that the plaintiff had been damaged in some way, we would have grave reservations about the measure of damages apportioned by the trial court, because that measure is not supported by the evidence presented by the parties. To reach the astronomical sum of damages assessed in this case, $8,545,459, the court adopted, *inter alia*, the position that the "actual charge" for transportation and handling in this case "did not exceed" $1.10 per CD-ROM shipped, an assessment again taken virtually verbatim from the plaintiff's proposed order. Although the methodology for arriving at the $1.10-per-CD-ROM figure was not described in the court's order, presumably the figure was derived from the only evidence produced that approximated that figure: a drop-shipment contract produced by the defendants showing a mailing sleeve cost of 23 cents per CD-ROM shipped and a drop-shipping cost of 87 cents per CD-ROM shipped, for a total cost of $1.10 per CD-ROM. The use of this figure in computing damages, however, was not supported by the evidence, because, as class representative plaintiff Mendenhall himself conceded, the defendants were entitled to include costs in addition to packaging and shipping costs as "actual costs" of transportation and handling. Specifically, Mendenhall testified that the defendants were entitled to include "shipping department" costs, such as the costs of employees who pick CD-ROMs from warehouse shelves and place them into packages, as a part of the defendants' "actual costs." The trial court's failure to include anything other than the mailing sleeve and drop-shipping costs in its evaluation of the "actual charge" of transportation and handling is not supported by the evidence and constitutes a secondary, independent ground for the reversal of the trial court's order.

We note as well that as a result of our holding today, the plaintiff's prayer for prejudgment interest is now moot, and no basis exists for a claim for attorney fees by the

6

plaintiff, the original claim having been based upon a percentage of the now nonexistent award of damages. For the foregoing reasons, the order of the circuit court of Madison County is reversed.

Reversed.

HOPKINS, J., concurs.

JUSTICE CHAPMAN, dissenting:

My colleagues glibly proclaim "no harm, no foul" in concluding that the plaintiff failed to establish that it suffered any damages. The majority finds no harm because they reason that the defendants could have increased the price of the CD-ROMs legitimately anyway under the subscription agreement to a price that would have included the amount the plaintiff claims the defendants improperly charged for shipping and handling. The majority believes that the plaintiff therefore still got the benefit of the bargain.

This analysis is flawed. Disguising a charge that the defendants were not legally entitled to under the agreement before November 1, 1997, and, thereafter, surreptitiously misrepresenting the charge as a price increase are precisely the kinds of deception that both the Illinois Consumer Fraud Act and the Minnesota consumer fraud statute were intended to protect the public against. These actions amount to an overcharge, pure and simple.

The fact that the defendants did not pay any state sales tax on the $6 charge prior to 1999 (which it was required to do if the charge was not for shipping, transportation, and handling), coupled with the defendants' own internal memoranda, establishes that the $6 charge was in reality for shipping-and-handling costs.

I believe that there was ample evidence to support the trial court's finding that the

defendants' actions amounted to an overcharge.  I further believe that the plaintiff put on credible evidence of the overcharge damages.  The judgment was not therefore manifestly against the weight of the evidence, and it should have been upheld.  See *Croft v. Lamkin*, 112 Ill. App. 2d 321, 251 N.E.2d 88 (1969); *In re Marriage of Divelbiss*, 308 Ill. App. 3d 198, 719 N.E.2d 375 (1999).

I would consequently affirm the trial court's judgment awarding compensatory damages and costs and further affirm the court's denial of attorney fees and prejudgment interest.

NO. 5-05-0029

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | |
|---|---|
| SMITH, ALLEN, MENDENHALL, EMONS & SELBY, a Partnership, | ) Appeal from the<br>) Circuit Court of<br>) **Madison County** |
| Plaintiff-Appellant and Cross-Appellee, | ) |
| | ) |
| v. | ) No. 99-L-120 |
| | ) |
| THE THOMSON CORPORATION; WEST GROUP, a Division of The Thomson Corporation; WEST PUBLISHING CORPORATION; WEST PUBLISHING COMPANY; and THE THOMSON LEGAL PUBLISHING COMPANY, | )<br>)<br>)<br>)<br>)<br>) Honorable |
| | ) Lewis E. Mallott, |
| Defendants-Appellees and Cross-Appellants. | ) Judge, presiding. |

**Opinion Filed**:      October 13, 2006

**Justices**:      Honorable Stephen L. Spomer, P.J.

                 Honorable Terrence J. Hopkins, J.,
                 Concurs
                 Honorable Melissa A. Chapman, J.,
                 Dissents

**Attorney for Appellant**      Rex Carr, The Rex Carr Law Firm, LLC, 412 Missouri Avenue, East St. Louis, IL 62201

**Attorneys for Appellees**      James F. Rittinger, Mark Lerner, Satterlee Stephens Burke & Burke LLP, 230 Park Avenue, New York, NY 10169; Stephen W. Thomson, Eric D. Berg, Thomson Law Offices, P.C., #1 Sunset Hills Professional Centre, Suite D, Edwardsville, IL 62025