NOTICE
Decision filed 04/08/24. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2024 IL App (5th) 210248-U

NO. 5-21-0248

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| AUSTIN BREITER, | ) | Appeal from the |
| | ) | Circuit Court of |
| Petitioner-Appellant, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 14-F-717 |
| | ) | |
| DENA SANTORO, | ) | Honorable |
| | ) | Alana I. Mejias, |
| Respondent-Appellee. | ) | Judge, presiding. |

JUSTICE WELCH delivered the judgment of the court.
Justices Barberis and McHaney concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The circuit court properly denied petitioner's petition for a finding of nonpaternity filed more than six years after he executed a voluntary acknowledgment of paternity. The court properly found that petitioner did not prove that respondent fraudulently concealed from him the fact that he was not the biological father where neither party knew until petitioner obtained a DNA test; respondent forfeited his contention that the statute denies him equal protection and his contention is without merit in any event.

¶ 2    Petitioner, Austin Breiter, appeals the circuit court's order denying his "Petition for Non-Paternity." He contends that the court's finding that respondent, Dena Santoro, did not fraudulently conceal from him the fact that he was not the father of her daughter, Skyler B., was against the manifest weight of the evidence. He alternatively contends that the statute barring him from revoking a voluntary acknowledgement of paternity absent such fraud is unconstitutional. We affirm.

1

¶ 3                                                    BACKGROUND

¶ 4      Respondent gave birth to Skyler in 2014. Petitioner signed a voluntary acknowledgement of paternity. He obtained court-ordered visitation with Skyler and paid child support. In 2020, he filed the petition at issue, alleging that DNA testing had excluded him as Skyler's father.

¶ 5      On January 15, 2021, the court conducted a hearing on the petition. Respondent, called as an adverse witness, testified that she told petitioner in October 2020 that Matt Gendron was Skyler's father. She had been unaware of this until petitioner informed her of the DNA results. Before that, she believed that petitioner was Skyler's father because "she looks like him." Since November 2020, Skyler had been in respondent's mother's custody.

¶ 6      Petitioner testified that in 2013 respondent sent him a text message stating that she was pregnant and that he was the father. He believed her at that time. He became suspicious when he learned that respondent had gotten pregnant twice and did not know who the fathers were. As a result, he completed a home DNA test and sent it to a laboratory which informed him that there was a 0% chance that he was Skyler's father. He then informed respondent, who told him that Gendron was likely the father.

¶ 7      Petitioner believed that the original statement that he was the father was a lie. Until he informed respondent of the DNA results, he had never been told that he was not the father. After he informed respondent about the DNA test, she confronted Gendron. Petitioner had been paying child support regularly and wanted it either terminated or sent directly to respondent's mother.

¶ 8      In her case-in-chief, respondent testified that she had encouraged petitioner to get a paternity test prior to Skyler's birth. He refused, saying "That's my kid regardless." He signed "all the papers" so that he could sign the birth certificate.

¶ 9    She believed petitioner was the father the entire time. She "questioned it little bit" when she initially got pregnant but discounted the possibility because she and Gendron "only hooked up one time" and "the dates didn't match up at all." Moreover, Skyler did not resemble Gendron.

¶ 10    The court noted that a voluntary acknowledgement of paternity must be challenged within two years unless the party proves by clear and convincing evidence that he was under a legal disability or duress, or that critical facts were fraudulently concealed. The court found the only exception potentially applicable was fraudulent concealment. However, petitioner failed to prove fraudulent concealment by clear and convincing evidence, as both parties believed that he was the father. The court noted that petitioner had "every opportunity" to do a DNA test at the time of Skyler's birth but declined. He instead executed the acknowledgment of paternity. The parties subsequently appeared in court several times. Petitioner requested visitation, a joint parenting order was entered, and child support was ordered, but petitioner never disputed that he was the father. The court thus denied the petition but terminated petitioner's child-support obligation because Skyler no longer resided with respondent, but with respondent's mother.

¶ 11    Petitioner moved to reconsider, arguing for the first time that the statute requiring a parent who signed a voluntary acknowledgement to seek rescission within two years absent fraud but permitting a biological father to establish a parent-child relationship at any time violates equal protection. The court denied the motion without comment. Petitioner timely appeals.

¶ 12                                ANALYSIS

¶ 13    Petitioner first contends that the circuit court's finding that he failed to prove fraudulent concealment was against the manifest weight of the evidence. We disagree.

¶ 14    Respondent has not filed a brief. Nevertheless, we may decide this appeal without the benefit of an appellee's brief. See *First Capitol Mortgage Corp. v. Talandis Construction Corp.*,

3

63 Ill. 2d 128, 133 (1976) (a reviewing court can decide the merits of the appeal where the record is simple and the claimed errors can be decided without the aid of an appellee's brief).

¶ 15    Shortly after Skyler's birth, petitioner signed a voluntary acknowledgement of paternity. See 750 ILCS 46/301 (West 2020). Once executed:

> "(a) A voluntary acknowledgment and any related denial may be challenged only on the basis of fraud, duress, or material mistake of fact by filing a verified petition under this Section within 2 years after the effective date of the voluntary acknowledgment or denial, as provided in Section 304 of this Act. Time during which the person challenging the voluntary acknowledgment or denial is under legal disability or duress or the ground for relief is fraudulently concealed shall be excluded in computing the period of 2 years." *Id.* § 309.

¶ 16    Petitioner does not contend that he was under a legal disability or duress. He claims only that he established that respondent fraudulently concealed from him that Gendron was Skyler's biological father. However, the court's finding to the contrary was not against the manifest weight of the evidence.

¶ 17    Following a bench trial, we will not reverse the trial court's judgment unless it is against the manifest weight of the evidence. *Smith, Allen, Mendenhall, Emons & Selby v. Thomson Corp.*, 371 Ill. App. 3d 556, 558 (2006). A judgment is against the manifest weight of the evidence only when an opposite conclusion is apparent or when findings appear to be unreasonable, arbitrary, or not based upon the evidence presented at the trial. *Id.*

¶ 18    To establish fraudulent concealment, a party must " 'allege facts demonstrating that his opponent affirmatively attempted to prevent the discovery of the purported grounds for relief and must offer factual allegations demonstrating his good faith and reasonable diligence in trying to

4

uncover such matters before trial or within the limitations period.' " *People v. Coleman*, 206 Ill. 2d 261, 290-91 (2002) (quoting *People v. McLaughlin*, 324 Ill. App. 3d 909, 918 (2001)).

¶ 19    Here, there was evidence that respondent truly believed that petitioner was Skyler's father until the DNA results proved otherwise. She testified that she had sex with Gendron only one time and that "the dates didn't match up at all." Moreover, she thought that Skyler resembled petitioner. Only when petitioner confronted her with the DNA test did she begin to suspect that Gendron might be the father.

¶ 20    Petitioner points to respondent's testimony that she "questioned it a little bit" at the time, but her having doubts that petitioner was the father is a far cry from taking affirmative steps to conceal the truth. In fact, the court could reasonably credit respondent's testimony that she encouraged petitioner to take a DNA test before he executed the acknowledgement.

¶ 21    Petitioner attempts to liken this case to *In re Marriage of Sparks*, 2018 IL App (1st) 180932, but both the legal issue and the nature of the evidence render that case distinguishable. There, the husband filed a petition pursuant to section 205 of the Illinois Parentage Act of 2015 (Act) (750 ILCS 46/205 (West 2016)). That section allows an action to declare the nonexistence of a parent-child relationship to be brought by a party presumed to be a parent by virtue of his marriage to the child's mother. *Id.* §§ 204(a), 205(a). Such an action "shall be barred if brought later than 2 years after the petitioner knew or should have known of the relevant facts." *Id.* § 205(b).

¶ 22    The trial court found that the husband did not know that the child was not his until his ex-wife told him sometime after their marriage was dissolved (despite evidence that the mother knew at the time of the child's birth who the father was). Thus, per the trial court's credibility findings, the evidence established that the husband "knew or should have known" only after the wife told

5

him. The evidence in this case likewise shows that respondent only recently told him that he was not the father. However, petitioner had to meet a higher standard in this case by proving fraudulent concealment. Here, the court reasonably concluded that both parties honestly believed that petitioner was the father and there was no evidence of fraudulent concealment.

¶ 23    Petitioner also relies on the dissent from *Ptaszek v. Michalek*, 238 Ill. App. 3d 72 (1992). There, more than two years after executing an agreed order of paternity, following a fight with the child's mother, the father sought to vacate the paternity order. The majority noted that the father had the opportunity to take a paternity test at the time of the child's birth; the mother did nothing to prevent this. *Id.* at 78 (citing *In re Marriage of Halas*, 173 Ill. App. 3d 218, 224 (1988) (silence alone is not fraudulent concealment and the issue of fraudulent concealment is necessarily analyzed in the context of the due diligence requirement)).

¶ 24    The court found, however, that the husband failed to exercise due diligence, but rather did the opposite:

> "The parties' short-lived affair was casual and Michalik married another man within months of the baby's birth. Instead of questioning his paternal standing, Ptaszek did everything possible to assure that Erik would be regarded by all as his natural son. \*\*\*
>
> The sole testimony in support of the alleged fraud was that Michalik first told Ptaszek that the child was his and then years later, during an argument, said the opposite. Both statements, necessarily, are at the most *opinions*; as long as Michalik had more than one sexual partner during the period of conception there was no way for anyone to be absolutely certain of paternity, particularly without blood tests or other evidence that neither party sought in the original paternity action. Therefore, we find that Ptaszek failed to establish a

6

knowingly false statement of material fact on which he had the right to rely." (Emphasis in original.) *Id.*

¶ 25    The court further noted:

"Ptaszek insisted on a judicial declaration of the very fact he now says he was precluded from ascertaining or disproving because of Michalik's fraud. We cannot approve such a solecism. From the time of Erik's birth, Ptaszek's aims were to acknowledge paternity, pay support, and sustain the father-child relationship through visitation. He had access to all the relevant facts except whether Michalik had other sexual partners. He chose not to question his fatherhood at a time when, if biological paternity was the true concern, he might have spared an innocent child much pain. We find it illogical and disturbing that Ptaszek now insists that he was defrauded, misled, or otherwise prevented from learning the 'true' facts of Erik's biological paternity." *Id.* at 79.

¶ 26    The dissent, by contrast, appears to have concluded that because the mother failed to reveal that she had sex with multiple partners prior to her son's birth, this amounted to fraudulent concealment. The dissent appears to disregard the principle that mere silence is not fraudulent concealment as no evidence was presented that the mother *knew* that one of her other partners was the father and prevented Ptaszek from learning this.

¶ 27    Even if we were persuaded by the dissent, however, the evidence in this case was different. Respondent's testimony, which the trial court apparently credited, was that she honestly believed that petitioner was the father. She stated that she only had sex with Gendron one time and did not believe that the timing was right. Moreover, she believed that Skyler resembled petitioner and not Gendron. Obviously, respondent was wrong but that is not the issue. A mere mistake is not fraudulent concealment. There was no evidence that respondent *knew* Gendron was the father and

7

affirmatively concealed this fact from petitioner. To the contrary, she testified without contradiction that she encouraged petitioner to take a paternity test. This should have at least alerted him that there was at least a possibility that he was not the father. However, the evidence showed that, as in *Ptaszek*, petitioner wanted to be seen as Skyler's father regardless of the " 'true' facts" surrounding her parentage.

¶ 28    Petitioner next contends that the statutory scheme violates his right to equal protection. We note initially that petitioner raised the constitutionality of the statute for the first time in his motion to reconsider. The purpose of a motion to reconsider is to make the trial court aware of newly discovered evidence, changes in the law, or that court's misapplication of existing law. *North River Insurance Co. v. Grinnell Mutual Reinsurance Co.*, 369 Ill. App. 3d 563, 572 (2006). As a result, any arguments raised for the first time in a motion to reconsider are forfeited unless they fall within the proper purpose of a motion to reconsider. *City of Rockford v. Joudeh*, 2023 IL App (4th) 220036-U, ¶ 46.

¶ 29    Moreover, the argument is not fully developed in petitioner's brief in this court. See *In re P.S.*, 2021 IL App (5th) 210027, ¶ 57 (" 'A reviewing court is entitled to the benefit of clearly defined issues with pertinent authority cited and a cohesive legal argument. *** The appellate court is not a depository in which an appellant may dump the entire matter of argument and research.' " (quoting *Wing v. Chicago Transit Authority*, 2016 IL App (1st) 153517, ¶ 11)).

¶ 30    Statutes are presumed constitutional, and the party challenging the constitutionality of a statute carries the burden of proving that the statute is unconstitutional. *People v. Aguilar*, 2013 IL 112116, ¶ 15. The constitutionality of a statute is a question of law that we review *de novo. Id.*

¶ 31    The equal protection clause (U.S. Const., amend. XIV) guarantees that similarly situated individuals will be treated similarly unless the government can demonstrate an appropriate reason

8

to treat them differently. *In re Destiny P.*, 2017 IL 120796, ¶ 14. Petitioner argues that one who has signed a voluntary acknowledgement of paternity may not revoke it after two years without an extraordinary showing while a biological father may petition to establish his paternity at any time. Petitioner does not explain why someone who has voluntarily proclaimed himself a child's father and a biological parent seeking to establish a relationship with his child are similarly situated and does not cite any case in support of such a proposition. One is trying to establish a parent-child relationship while the other is trying to terminate his parental responsibilities. This fact alone provides a rational basis for treating them differently.

¶ 32    "[A] valid voluntary acknowledgment filed with the Department of Healthcare and Family Services, as provided by law, is equivalent to an adjudication of the parentage of a child and confers upon the acknowledged father all of the rights and duties of a parent." 750 ILCS 46/305(a) (West 2020). Moreover, a voluntary acknowledgment "has the full force and effect of a judgment entered" under the Act. *Id.* § 305(b). Because it is a judgment, the policy favoring the finality of judgments limits the circumstances under which it can be collaterally attacked. *Cf.* 735 ILCS 5/2-1401 (West 2020).

¶ 33    Signing a voluntary acknowledgement estops the party from even requesting a paternity test. 8 Nichols, Illinois Civil Practice § 135:17 (citing 750 ILCS 46/609(c) (West 2020)). Moreover, contrary to petitioner's assertion, a voluntary acknowledgement prevents even a party claiming to be the biological father from establishing his paternity after two years. 750 ILCS 46/609(b) (West 2020).

¶ 34    A more relevant comparison for equal-protection purposes would be a biological father who has been acknowledged as such. One who executes a voluntary acknowledgement becomes the child's parent to the same extent as one who is found to be the parent on the basis of genetic

9

testing. In either case, the child needs the stability and support of having an acknowledged father. The law thus treats them equally, providing that neither may simply change his mind and discontinue parental responsibilities.

¶ 35                                                   CONCLUSION

¶ 36    For the reasons stated, we affirm the circuit court's judgment.


¶ 37    Affirmed.